UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GARRET SHANK,

Plaintiff,

v.

PRESIDIO BRANDS, INC.,

Defendant.

Case No. 17-cv-00232-DMR

**ORDER ON DEFENDANT'S MOTIONS TO DISMISS AND TO STAY**

Re: Dkt. No. 41, 42

Plaintiff Garret Shank filed this putative class action against Defendant Presidio Brands, Inc. ("Presidio"), alleging false, misleading, and deceptive marketing practices with respect to Presidio's "Every Man Jack" line of men's personal hygiene products. Presidio moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the amended complaint. [Docket No. 41.] It also moves to stay the action pending referral of the matter to the Food and Drug Administration ("FDA"). [Docket No. 42.]

The court held a hearing on January 11, 2018. For the following reasons, Presidio's motion to dismiss is granted in part and denied in part. The motion to stay is denied.

**I.      BACKGROUND**

Shank makes the following allegations in his amended complaint, all of which are taken as true for purposes of the motion to dismiss.[1] According to Shank, Presidio seeks to capture a growing segment of consumers who will pay a premium for "natural, 'naturally derived', and plant-based products." [Docket No. 31 (Am. Compl.) ¶¶ 22, 34. It thus "designs, markets, distributes, and sells its Every Man Jack brand products with labels claiming that the products

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

contain 'only naturally derived ingredients." This claim is "coupled with images of plants and

forests intended to give the impression that its products' ingredients are all-natural and plant-

based, and do not contain synthetic, artificial, or toxic ingredients." *Id*. at ¶¶ 22, 23. The images,

along with statements referring to the ingredients in Every Man Jack products as "only naturally

derived," "naturally," "natural," and "naturally-derived," appear throughout the Every Man Jack

website, in magazine advertisements and articles, and on product labels. *Id*. at ¶ 23. For example,

the amended complaint includes a screenshot of the Every Man Jack website that features "a

wood-grain background and wholly focuses on a large image of a forest and the word 'naturally.'"

*Id*. at ¶ 4. The website also contains the following statements regarding "natural" and "naturally-

derived" ingredients in Every Man Jack products:

> EMJ will, however, give you products made from high-quality
> formulas and natural ingredients, without costing you an arm and a
> leg. . . .
>
> Our products give you exceptional performance *using only naturally
> derived ingredients*. No parabens, no phthalates, no dyes, no
> sodium lauryl sulfate, and never tested on animals.

*Id*. at ¶ 23 (emphasis added). Tweets by the Every Man Jack Official Twitter account contain

similar statements such as "natural," "naturally derived," "only naturally derived ingredients," and

"Everything we make is naturally derived." *Id*.

The amended complaint includes examples of the packaging and labeling of the Every

Man Jack Sandalwood Body Wash and Lime Citron Body Wash. The Lime Citron Body Wash

depicts a wood-grain background and an icon of a leaf, under which appears the statement

"Naturally Derived." *Id*. at ¶ 5. An image of the back panel of the Sandalwood Body Wash

contains the same leaf icon with the words "Naturally Derived" statement, along with the

following statement:

> Our products give you exceptional performance using *only naturally
> derived ingredients*. No parabens, no phthalates, no dyes, no
> sodium lauryl sulfate, and never tested on animals.

*Id*. (emphasis added). Shank alleges upon information and belief that every product at issue in the

lawsuit has "the same or substantially similar product packaging that contain[s] the same or

substantially similar deceptive claims." *Id*. at ¶ 6.

According to Shank, Presidio's representation that Every Man Jack products "contain only naturally derived ingredients" is false, misleading, and deceptive, because they actually "contain numerous ingredients that are artificially-engineered through multiple synthetic processes rendering the resulting ingredients and its components unnatural and not naturally-derived." *Id*. at ¶ 24; *see also* ¶ 2. Shank identifies 20 products that he alleges on information and belief contain synthetic ingredients, including 2-in-1 body + face wash, 2-in-1 shampoo + conditioner, and body wash. *Id*. at ¶ 1 n.1. The amended complaint includes a chart of 31 "synthetic" and/or "synthetically manufactured" ingredients and the Every Man Jack products in which they are found. *Id*. at ¶ 24 n.6.

Shank purchased several Every Man Jack products during the alleged class period, which encompasses four years prior to the filing of the complaint on January 17, 2017. Shank's purchases include Every Man Jack Face Lotion Signature Mint, Face Lotion with SPF, Face Scrub Signature Mint, and Face Wash Signature Mint. *Id*. at ¶¶ 1, 10. He alleges that he saw, relied upon, and reasonably believed that these products "only contained natural ingredients because of Presidio's representations including . . . the repeated and highlighted use of the phrases 'naturally derived' and 'only naturally derived ingredients', the picture of a green leaf prominently displayed on the bottles, depictions of plants and trees, [and] listing of other earth-friendly and health-conscious features of the product," along with the products' wood-grain packaging. *Id*. at ¶ 11. Shank "saw and relied on Every Man Jack's product packaging depicting a plant, stating 'naturally' in bold font on the back panel, and stating that the products contain 'only naturally derived ingredients.'" *Id*. at ¶ 12. Shank also reviewed information about the products in Men's Health magazine, "including a description that the products contain only naturally derived ingredients." *Id*. These representations were material to Shank in deciding to purchase Every Man Jack products, and if he had known that the products contained "synthetic and hazardous ingredients," he would not have purchased the products or would have paid less for them. *Id*. at ¶ 13.

Based on these allegations, Shank asserts three claims for relief under California law: 1) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750 et

seq.; 2) violation of the False Advertising Law ("FAL), California Business & Professions Code section 17500 et seq.; and 3) violation of the Unfair Competition Law ("UCL"), California Business & Professions Code section 17200 et seq. He seeks to represent a nationwide class of allegedly similarly situated persons, defined as:

> All individuals in the United States who purchased any Every Man Jack brand product containing artificially-processed and synthetic ingredients and labeled or marketed as "naturally derived."

Am. Compl. ¶ 38. At the hearing, Shank's counsel confirmed that this description of the nationwide class contains an error. It should read "All individuals in the United States who purchased any Every Man Jack brand product containing artificially-processed and synthetic ingredients and labeled or marketed as containing "only naturally derived ingredients." **Shank shall amend this allegation in conformance with counsel's representation.**

Presidio now moves to dismiss the amended complaint and/or to stay the action.

## II. MOTION TO DISMISS

### A. Legal Standards

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1). The challenging party may make a facial or factual attack challenging subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In contrast, a factual attack disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* at 1039. A factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *White*, 227 F.3d at 1242 (citation omitted). Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of

4

jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr.* Ct., 828 F.2d 1385, 1388 (9th Cir. 1987).

United States District Court
Northern District of California

### B.    Request for Judicial Notice

Presidio submitted a request for judicial notice along with its motion to dismiss.  [Docket Nos. 34 (Request for Judicial Notice, "RJN"); 33 (Diesch Decl., Sept. 28, 2017) Exs. 1-9.]  It asks the court to take judicial notice of webpages from Defendant's website, www.everymanjack.com, pursuant to Federal Rule of Evidence 201.  RJN; Diesch Decl. Exs. 1-9.  Presidio asserts that the Every Man Jack's website pages "are properly before this court based on Plaintiff's alleged reliance on the marketing contained" on the website.  Mot. 3 n.1 (citing Am. Compl. ¶¶ 4, 5, 12, 23).  It also states that the descriptions in the amended complaint of the "content and imagery" of the website "are inconsistent with the actual content and imagery of the website."  RJN.  Under Rule 201, a court may only take judicial notice of a fact "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed R. Evid. 201(b).  Presidio does not identify any specific facts on the Every Man Jack website pages that satisfy this standard, and offers no authority that the webpages themselves are appropriate for judicial notice.  To the extent Presidio argues that the webpages are subject to the incorporation by reference rule, such a theory also fails.  Under that rule, a court can consider documents referenced in the complaint and accepted by all parties as authentic.  *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  If the webpages submitted by Presidio were the actual webpages relied upon by Shank and described in the complaint, they could be subject to consideration under the incorporation by reference doctrine.  However, the exact dates of the webpages are not indicated on the exhibits or in the declaration purporting to authenticate them; instead, each webpage states "Copyright © 2017 Every Man Jack."   It is therefore impossible to determine whether the webpages existed in the form presented prior to January 17, 2017, the date Shank filed his complaint.  Moreover, Shank objects to the webpages as lacking foundation, and therefore does not accept them as authentic.  [Docket No. 44.]  For these reasons, the court declines to take judicial notice of Exhibits 1-9, and declines to consider them under the incorporation by reference rule.

United States District Court
Northern District of California

## C.     Discussion

Shank alleges violations of the CLRA, FAL, and UCL.  The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. & Prof. Code § 17500.  The UCL prohibits any "fraudulent business act or practice" as well as "any unlawful . . . business act or practice."  Cal. Bus. & Prof. Code § 17200.  Shank's UCL claim is based on the fraudulent and unlawful prongs of the UCL.  *See* Am. Compl. ¶¶ 75, 78.  The "unlawful" UCL theory is predicated on Defendant's alleged violations of the CLRA and FAL.  *Id*. at ¶ 78.

Presidio challenges Shank's standing to bring certain claims, as well as the sufficiency of the allegations.

### 1.     Standing

#### a.     Standing to Seek Injunctive Relief

Presidio argues that Shank lacks Article III standing to seek injunctive relief because he does not allege that he intends to purchase the products at issue in the future, or that he would purchase the products again if they were labeled differently.

A plaintiff must demonstrate standing "separately for each form of relief sought."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000).  A plaintiff seeking injunctive relief must demonstrate a "real or immediate threat that they will be wronged again—a likelihood of substantial and immediate irreparable injury."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1982) (quotation omitted).  "[T]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"  *Id*. at 102 (citations omitted).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974).  Further, a named plaintiff must show that he himself is subject to a likelihood of future injury.  "Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek."  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

After briefing on this motion was completed, the Ninth Circuit issued its opinion in

*Davidson v. Kimberly-Clark Corp*., 873 F.3d 1103, 1113 (9th Cir. 2017). In *Davidson*, the plaintiff brought FAL, CLRA, UCL, and fraud claims against the manufacturer of pre-moistened wipes. The manufacturer labeled and marketed the wipes as "flushable," meaning "suitable for being flushed [down a toilet]," and the plaintiff paid a premium for the "flushable" wipes, as compared to non-flushable wipes. *Id*. at 1107, 1110. The plaintiff later learned that the products were not truly "flushable." *Id*. at 1108. The district court dismissed the injunctive relief claim, finding that the plaintiff lacked standing because she had no intention of purchasing the same product in the future and therefore had no risk of future injury. *Id*. at 1109, 1112.

The Ninth Circuit reversed, finding that the plaintiff had "properly alleged that she faces a threat of imminent or actual harm by not being able to rely on [the defendant's] labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief." *Id*. at 1113. The court recognized that its decision resolved a district court split regarding "to what extent a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief," resolving the split "in favor of plaintiffs seeking injunctive relief." *Id*. at 1113, 1115. *Davidson* held that plaintiffs have standing to pursue injunctive relief in at least two circumstances:

> In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id*. at 1115 (citations omitted). The plaintiff in *Davidson* alleged that she continued to desire to purchase wipes suitable for disposal in a toilet, would purchase "truly flushable wipes" manufactured by the defendant if it were possible, and was continually presented with the defendant's flushable wipes packaging, but had "no way of determining whether the representation 'flushable' [was] in fact true." *Id*. at 1116. The Ninth Circuit found these allegations sufficient for standing purposes:

> We therefore hold that Davidson's allegation that she has no way of determining whether the representation "flushable" is in fact true

8

United States District Court
Northern District of California

> when she regularly visits stores . . . where Defendants' "flushable" wipes are sold constitutes a threatened injury [that is] certainly impending, thereby establishing Article III standing to assert a claim for injunctive relief.

*Id.* (citation and internal quotation marks omitted).

At the hearing, Shank's counsel conceded that the operative complaint currently does not contain factual allegations to establish standing to pursue injunctive relief, but represented that Shank will be able to allege sufficient facts if given the opportunity. Accordingly, Shank's request for injunctive relief is dismissed with leave to amend.

### b. Unpurchased Products

Presidio next argues that Shank lacks standing to pursue claims to the extent they include Every Man Jack products that he did not personally purchase. Shank responds that he has standing with regard to all of the products challenged in the amended complaint because there is sufficient similarity between the products he bought and those he did not buy. They are all personal hygiene products marketed to men that are used for washing, facial moisturizing, and shaving. All of the products are marketed in the same way by "emphasizing Defendant's 'only naturally derived ingredients' message to consumers." Opp'n 6.

The parties acknowledge that there is no controlling authority in the Ninth Circuit on the issue of whether a named plaintiff in a class action has standing to assert claims based on products he or she did not purchase. *See Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012) (citation omitted). Courts have split on the question of whether actual purchase is required to establish standing. *See id.* (collecting cases); *see also Smedt v. The Hain Celestial Group, Inc.*, No. 5:12-CV-03029-EJD, 2014 WL 2466881, at *6 (N.D. Cal. May 30, 2014) (collecting cases). The majority of courts "hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller*, 912 F. Supp. 2d at 869; *see also Astiana v. Dreyer's Grand Ice Cream, Inc*., Nos. C-11-2910 EMC, C-11-3164 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (observing that the "critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased."). For example, in *Dreyer's*, the court found that the plaintiffs had alleged sufficient similarity between

9

the purchased and unpurchased products at issue in the lawsuit:

> Plaintiffs are challenging the same kind of food products (*i.e.,* ice cream) as well as the same labels for all of the products—*i.e.,* "All Natural Flavors" for the Dreyer's/Edy's products and "All Natural Ice Cream" for the Haagen–Dazs products. That the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors. Indeed, many of the ingredients are the same—*i.e.,* 21 out of 59 ice creams contain propylene glycol monostearate; 43 out of 59 contain potassium carbonate; and all 59 appear to contain glycerin, mono and diglycerides, tetrasodium pyrophosphate, and xanthan gum.

2012 WL 2990766, at *13.

The court adopts the "substantial similarity" approach and concludes that Shank has sufficiently pleaded the requisite level of similarity. Shank alleges that he purchased five Every Man Jack products: face lotion, face lotion with SPF, face scrub, face wash, and shave cream. Am. Compl. ¶ 10. As in *Dreyer's*, Shank challenges "the same basic mislabeling practice" across the Every Man Jack products named in his amended complaint, including those that he purchased and those he did not, namely, that Presidio labels and markets all of these products as containing "only naturally derived ingredients." Am. Compl. ¶¶ 1-6. Shank alleges that the products are similarly packaged in wood-grain containers containing similar or identical representations. *Id.* at ¶¶ 5-6. The court notes that paragraph 6 of the amended complaint states that "every EMJ Product at issue in this complaint has the same or substantially similar product packaging that contain[s] the same or substantially similar deceptive claims employed by Presidio." At the hearing, Shank's counsel confirmed that the "deceptive claims" to which this allegation refers is the alleged misrepresentation that all of these products contain "only naturally derived ingredients." **Shank shall amend the allegation in conformance with counsel's representation.**

The court finds that Shank has pleaded that all of the challenged products are sufficiently similar for him to proceed with his claims, and denies Presidio's motion to dismiss on this ground.

### 2. Sufficiency of the Complaint

Presidio argues that Shank's claims suffer from insufficient pleading in several ways. First, it asserts that Shank's claims are grounded in fraud and do not satisfy Rule 9(b)'s heightened pleading standard. It also argues that Shank has failed to show that members of the public are

likely to be deceived by Presidio's labeling and advertising (the "reasonable consumer" standard); that the claims are based on non-actionable advertising puffery; that Presidio had no duty to disclose the ingredients in its products; and that Shank has not alleged a material misrepresentation by Presidio.

### a. Rule 9(b)

In order to recover under fraud-based claims, a "party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Davidson*, 873 F.3d at 1110 ("[b]ecause [the plaintiff's] common law fraud, CLRA, FAL, and UCL causes of action are all grounded in fraud, the FAC must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)."); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1234 (N.D. Cal. 2012) (analyzing UCL, CLRA, and FAL claims under Rule 9(b) standard). Allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007) (*quoting Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must include "the who, what, when, where, and how" of the misconduct charged). "To allege fraud with particularity, a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re Glenfed, Inc. Sec. Litig.,* 42 F.3d 1541, 1548 (9th Cir. 1994) (emphasis in original). To comply with Rule 9(b), fraud allegations must be specific enough to give defendants notice of the particular misconduct that is alleged to constitute the fraud so that they can defend against the claim. *Bly-McGee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir. 2001). Shank does not dispute that Rule 9(b) applies to his claims.

The central allegation in this case is that Presidio has misrepresented that Every Man Jack products contain "only naturally derived ingredients." *See* Am. Compl. ¶¶ 1, 11, 12, 23, 24. Presidio cultivates this claim using imagery such as wood-grain packaging, plant imagery, and simplistic labeling, as well as statements like "naturally," "natural," "naturally-derived," and "only

naturally derived" throughout its website, in magazine advertisements and articles, on social media, and on product labels. *Id.* at ¶ 23. The statements and images are "intended to give the impression that its products' ingredients are all-natural and plant-based, and do not contain synthetic, artificial, or toxic ingredients." *Id.* These allegations are sufficient to satisfy Rule 9(b)'s heightened pleading standard, for they state the "who, what, where, when, and how" of the alleged misrepresentations. Shank alleges that Presidio made the misleading statement that the Every Man Jack products contain "only naturally derived ingredients," *id.* at ¶¶ 2, 22, and that the "only naturally derived ingredients" statement appeared on the back labels of the products. *Id.* at ¶¶ 5, 6. Presidio "further cultivated" the impression that its products' ingredients are "all-natural and plant-based" through its packaging, labeling, and marketing. *Id.* at ¶ 23. Shank alleges that he purchased products containing these misrepresentations "during the class period alleged herein." *Id.* at ¶ 10. Finally, Shank explains how the statement is misleading by providing a definition of "synthetic" and alleging that the Every Man Jack products actually contain "numerous ingredients that are artificially-engineered through multiple synthetic processes rendering the resulting ingredients and its components unnatural and not naturally-derived." *Id.* at ¶¶ 2 n.3, 24; *see also* ¶¶ 2 ("EMJ Products, in fact, contain mostly synthetic ingredients that are not natural or naturally derived.") 7 ("EMJ Products . . . contain[] predominantly synthetic, artificially-processed ingredients"), 8 ("EMJ Products in fact contain synthetic, artificial ingredients"). The amended complaint contains a chart listing specific allegedly synthetic ingredients, the products that contain those ingredients, and an explanation of how the ingredient is not naturally derived. *Id.* at ¶ 24.

Presidio argues that the amended complaint lacks specificity for two reasons: first, that Shank does not allege what is false or misleading about Presidio's statements; and second, that Shank does not provide the specifics about when he observed the misleading statements on Presidio's website or in magazine advertisements, or how a "masculine woodgrain look" is false or misleading. Neither argument is persuasive. As to the first, Presidio contends that "[a] majority of the allegedly offending ingredients are in fact naturally derived," and that "natural standards also allow the presence of 'synthetic' ingredients" in certain circumstances. Mot. to

Dismiss 12-13. It also asserts that Shank alleges no facts to support his allegation that the non-natural ingredients are "toxic" or "hazardous," or that such ingredients would not normally expected to be in cosmetics. *Id.* at 13. These arguments go to the merits of whether Shank ultimately will be able to prove that the representations made in the packaging and marketing of the products were false or misleading. Such issues are not appropriate for resolution on a motion to dismiss. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008).

Presidio's second argument, that Shank does not provide specifics about the alleged misleading statements on Presidio's website or in magazine advertisements, misapprehends the basis for Shank's claims. Shank alleges that the labeling of Every Man Jack products contains the false statement "only naturally derived ingredients," and that taken as a whole, the other imagery and representations such as the wood-grain packaging, plant imagery, and statements on the products, website, social media, and advertisements, cultivate that message. Shank's allegations about the "only naturally derived ingredients" statement on the products' labels are sufficiently specific to give Presidio notice of the conduct that is alleged to constitute the fraud so that it can defend against his claims. *See Balser v. Hain Celestial Grp., Inc.*, 640 Fed. Appx. 694, 695-96 (9th Cir. 2016) (finding plaintiffs had pleaded claims with sufficient particularity where "[t]hey provided a definition of 'natural,' and explained that 'natural' means free of synthetic ingredients . . . [and] alleged [defendant] used the phrase '100% Vegetarian' on the back of the products' packaging, which, the complaint avers, means products derived from plants.").

### b. Reasonable Consumer Standard

Presidio next argues that Shank's claims must be dismissed because he fails to allege sufficient facts to show that members of the public are likely to be deceived by Presidio's labeling and advertising. Presidio asserts that Shank's claims therefore do not meet the "reasonable consumer" standard. Mot. to Dismiss 14, 20.

False advertising claims under the CLRA, FAL, and the fraudulent prong of the UCL are governed by the reasonable consumer standard. *Williams*, 552 F.3d at 938; *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (courts must evaluate whether a label is misleading "from the vantage of a reasonable consumer" (quotation omitted)). Under the reasonable consumer standard,

a plaintiff must show that members of the public are likely to be deceived. *Id.* (citation omitted). "This requires more than a mere possibility that [a defendant's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quotation omitted). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (quotation omitted). "[T]he primary evidence in a false advertising case is the advertising itself." *Williams*, 552 F.3d at 938 (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003). The question of whether a business practice is deceptive is generally a question of fact not amenable to determination on a motion to dismiss. *Williams*, 552 F.3d at 938. However, "where a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate." *Werbel v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (holding plaintiff failed to establish that a reasonable consumer would likely be deceived into believing that "Crunch Berries" cereal derived nutritional value from fruit).

Presidio acknowledges that "whether a plaintiff is likely to be misled is often a question of fact." Mot. to Dismiss 15. Nevertheless, it argues that Shank's allegation that the Every Man Jack marketing and labeling is false and misleading is unreasonable and conclusory because Shank does not "provide a standard or definition for what constitutes a 'natural' versus 'naturally derived' versus 'plant-based' cosmetic." *Id.* at 15-16. As with its Rule 9(b) argument, Presidio misstates the basis for Shank's claims, which is that Presidio labels its products as containing "only naturally derived ingredients"; this statement, taken with the use of words such as "natural," "naturally," and "naturally-derived" and plant imagery, gives the false impression that the products do not contain synthetic ingredients. The "only naturally derived ingredients" statement is another way of saying "100% naturally derived ingredients." As another court in this district recently observed, "[i]t is now well established in the Ninth Circuit that for purposes of a motion to dismiss a reasonable consumer could understand the statements '100% natural' or 'all natural' or 'natural' together with other terms implying 'all natural' to mean that a product does not

contain any non-natural ingredients." *Gasser v. Kiss My Face, LLC*, No. 17-CV-01675-JSC, 2017 WL 4773426, at *5 (N.D. Cal. Oct. 23, 2017) (citing *Williams*, 552 F.3d at 938-39 and *Balser*, 640 Fed. Appx. at 695-96). The statement on the labels of Every Man Jack products "could easily be interpreted by consumers as a claim that all the ingredients in the product[s] were natural," which Shank has plausibly alleged is false. *See Williams*, 552 F.3d at 939.

Presidio also argues that the ingredients in Every Man Jack products are "fully and conspicuously disclosed" in the ingredient list, as required by FDA regulations. Accordingly, the products' labeling does not mislead consumers. Mot. to Dismiss 16. This argument is unavailing, as the Ninth Circuit has held that reasonable consumers should not be "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Williams*, 552 F.3d at 939; *Balser*, 640 Fed. Appx. at 696 ("an ingredient list does not correct, as a matter of law, misrepresentations on the product's label. Rather, the likely impact of such a list on a reasonable consumer is a factual issue, not determinable on the pleadings.").

### c. Puffery

Presidio next moves to dismiss Shank's claims as non-actionable advertising puffery. "Puffery is 'exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely.'" *In re Clorox*, 894 F. Supp. 2d at 1233 (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)). "While product superiority claims that are vague or highly subjective often amount to nonactionable puffery, 'misdescriptions of specific or absolute characteristics of a product are actionable.'" *Southland Sod Farms*, 108 F.3d at 1145 (quoting *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 246 (9th Cir. 1990)); *see also Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 998 (N.D. Cal. 2007) ("Factual representations . . . are actionable." (citation omitted)). "Courts analyzing whether a statement constitutes puffery examine whether the statements are general assertions that say nothing about the specific characteristics or components of the products or whether they are specific factual assertions." *Rojas v. Gen. Mills, Inc.*, No. 12-CV-05099-WHO, 2014 WL 1248017, at *5 (N.D. Cal. Mar. 26, 2014). "[W]hether an alleged misrepresentation 'is a statement of fact' or is instead

'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion." *Newcal*

*Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008).

Presidio argues that the challenged claims and imagery—specifically, Presidio's use of wood-grain packaging, use of the word "naturally" on its website, and "references to using naturally derived ingredients"—are non-actionable puffery. Mot. to Dismiss 17. It asserts that such statements "are subjective with no concrete, discernable meaning in the cosmetic context, and which cannot be proven either true or false." *Id.* Again, Presidio misstates the basis for Shank's claims. Shank alleges that Presidio labels and markets its products as containing "only naturally derived ingredients," and that the statement, combined with other words including "natural," "naturally," and "naturally-derived" and use of plant imagery, gives the false impression that the products do not contain synthetic ingredients. These statements are not puffery, since a reasonable consumer could interpret Presidio's statements as a definitive representation that its Every Man Jack products contain only naturally derived ingredients, and do not contain synthetic ingredients. *See, e.g., Fagan v. Neutrogena Corporation*, No. 5:13-cv-01316-SVW-OP, 2014 WL 92255, at *2 (C.D. Cal. Jan. 8, 2014) (concluding that phrases "100% naturally sourced sunscreens," "100% naturally sourced sunscreen ingredients," and "naturally-sourced sunscreen ingredients" were actionable, finding that the phrases were "misleading to a reasonable consumer because the Products actually contain[ed] numerous unnatural synthetic ingredients."); *Rojas*, 2014 WL 1248017, at *5 (finding "the alleged misrepresentation '100% NATURAL'" that appeared on defendant's packaging was "not merely general in nature . . . [because] [t]he statement convey[ed] the affirmative and specific factual representation that the products [were] made entirely of *natural* ingredients," even though they contained Genetically Modified Organisms and other synthetic ingredients (emphasis in original)).

### d. Duty to Disclose

Presidio next argues that Shank's CLRA claim and the associated UCL claim fail because Presidio had no duty to disclose information about the ingredients in the Every Man Jack products at issue, that is, "whether ingredients began as plants, animals, or minerals." Mot. to Dismiss 18. In support, Presidio cites *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012), in

which the Ninth Circuit noted that "California courts have generally rejected a broad obligation to disclose [design defects], adopting instead the standard as enumerated by the California Court of Appeal in *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006)." Under *Daugherty*, "a manufacturer is not liable for a fraudulent omission concerning a latent defect under the CLRA, unless the omission is 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Id.* (quoting *Daugherty*, 144 Cal. App. 4th at 835).

Presidio's argument appears to be based upon Shank's allegation that Presidio "fraudulently omitted material information about its product, i.e., the type of information that would affect a reasonable consumer's purchasing decisions." Mot. to Dismiss 18. According to Presidio, Shank must show Presidio had a duty to disclose information about the ingredients in the products in order to prevail with his CLRA and UCL claims under *Wilson* and *Daugherty*. *Id.* Presidio's argument is unavailing. *Wilson* and *Daugherty* were cases involving design defects, not mislabeling. Shank does not allege that the Every Man Jack products are themselves defective.

### e. Material Misrepresentation

Next, Presidio argues that Shank's CLRA and FAL claims fail because Shank has not alleged a material misrepresentation and thus cannot establish causation in the form of reliance.

California Civil Code section 1780(a) permits an action by a consumer "who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by [California Civil Code] Section 1770." "Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof." *Wilens v. TD Waterhouse Grp., Inc.*, 120 Cal. App. 4th 746, 754 (2003). However, "[i]n CLRA actions alleging fraud on behalf of a class of consumers, causation can sometimes be inferred by the materiality of the misrepresentation." *Id.* at 755. "A misrepresentation of fact is material if it induced the plaintiff to alter his position to his detriment. Stated in terms of reliance, materiality means that without the misrepresentation, the plaintiff would not have acted as he did." *Caro v. The Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668 (1993).

Presidio argues that the amended complaint does not allege sufficient facts to establish a

material misrepresentation, since there is no allegation of an "all natural" or "100% natural" claim anywhere on its products. Mot. to Dismiss 20. The amended complaint, however, explicitly alleges Presidio's alleged misrepresentation that the products contain "only naturally derived ingredients," and plausibly alleges why this statement is false. Shank further alleges that he would not have purchased the Every Man Jack products or would have paid less for them, had he known that the products contained "synthetic and hazardous" ingredients. Am. Compl. ¶¶ 13, 32. These allegations sufficiently plead a material misrepresentation.

Presidio offers no other argument supporting its claim that this is not a material misrepresentation for purposes of establishing causation. Its motion to dismiss the CLRA and FAL claims on this ground is denied.

### 3. Claims on Behalf of a Nationwide Class

Presidio argues that Shank's requests for relief on behalf of a nationwide class should be dismissed, asserting that neither the language nor legislative history of the CLRA, FAL, or UCL indicates that the legislature intended the statutes to operate extraterritorially. Presidio asserts that the Ninth Circuit's decision in *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), precludes Shank from pursuing California state law claims on behalf of non-California residents.

In *Mazza*, the plaintiffs brought a putative class action on behalf of car owners and lessees, and the district court certified a nationwide class of consumers pursuing claims under California consumer protection statutes. 666 F.3d at 585. The Ninth Circuit vacated the class certification order, holding that the district court erroneously concluded that California law applied to the entire nationwide class. *Id.* The court performed an extensive choice-of-law analysis comparing how various states' consumer protection laws applied to the facts of the plaintiffs' claims, *see id.* at 589-94, and concluded that "[u]nder the facts and circumstances of [the] case," California's choice-of-law rules dictated that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.* at 594. Although the Ninth Circuit decided *Mazza* in the context of reviewing a class certification order, some courts have applied the case to dismiss putative nationwide consumer

18

class claims at the pleading stage. *See, e.g.*, *Todd v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-JST, 2016 WL 344479, at *6-7 (N.D. Cal. Jan. 28, 2016) (dismissing a putative nationwide class claim under Kentucky unjust enrichment law, noting that "the advanced stage of litigation" and discovery weighed against waiting until the class certification stage to address the issue and conducting a choice of law analysis); *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1006-10 (N.D. Cal. 2014) (dismissing both individual and nationwide class claims with leave to amend for failure to include sufficient allegations to support the choice of California consumer protection laws). Other courts have declined to apply the choice-of-law analysis at the pleading stage, instead deferring the issue until class certification. *See, e.g., Brazil v. Dole Food Co., Inc.*, No. 12-CV-01831-LHK, 2013 WL 5312418, at *11 (N.D. Cal. Sept. 23, 2013) (finding that "striking the nationwide class allegations at [the pleading stage] would be premature," noting that *Mazza* "depended heavily on a detailed choice-of-law analysis" and that the defendant had failed to satisfy its burden to show that foreign law governed the class claims); *Won Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355 JCS, 2013 WL 1632697, at *21 (N.D. Cal. Apr. 16, 2013) ("[t]he Court finds the choice of law question raised by Defendants to be premature and therefore declines Defendants' invitation to engage in such an analysis at this early stage of the case.").

Here, Presidio does not include a choice of law analysis, instead relying on the Ninth Circuit's analysis in *Mazza* to argue that Shank's nationwide class allegations should be dismissed.[2] Mot. to Dismiss 22-23. However, the Ninth Circuit in *Mazza* declined to set a strict rule against certifying nationwide consumer classes under California law, instead noting that its holding was based on "the facts and circumstances of [that] case" and declining to express a "view whether on remand it would be correct . . . to certify a class with members more broadly [than only California residents] but with subclasses for class members in different states, with different jury instruction for materially different bodies of state law." 666 F.3d at 594. Under these circumstances, the court concludes that it is premature to dismiss the nationwide class allegations

---

[2] Presidio attempts to present a choice-of-law analysis in its reply. The court need not address legal issues raised for the first time in a reply brief. *United States v. Rozet*, 183 F.R.D. 662, 667 (N.D. Cal. 1998).

at the pleading stage, and finds that the issue is more properly addressed at the class certification stage. Accordingly, the court denies Presidio's motion to dismiss the nationwide class claims.

### 4. Plaintiff's Punitive Damages Claim

Finally, Presidio moves to dismiss as insufficiently pleaded Shank's request for punitive damages in connection with his first claim for violation of the CLRA.

A plaintiff may recover punitive damages for his tort claims pursuant to California Civil Code section 3294, which authorizes an award for exemplary damages against a tortfeasor when there is "clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice . . . ." Cal. Civ. Code § 3294(a). Pursuant to Rule 9(b), "malice, intent, knowledge, and other conditions of the mind may be alleged generally." Accordingly, "plaintiffs need not plead 'any particularity in connection with an averment of intent, knowledge or condition of the mind.'" *Gasser*, 2017 WL 4773426, at *9 (quoting *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in SEC v. Todd*, 642 F.3d 1207, 1216 (9th Cir. 2011)). The amended complaint alleges that Presidio knows that consumers "reasonably rely on [its] representations in forming the belief that the EMJ Products do not contain synthetic, artificial or toxic ingredients," "intends for consumers to rely on its visual and actual representations," and deceives consumers in order "to command a premium price" for its products. Am. Compl. ¶¶ 3, 8, 26, 33. These allegations of Presidio's fraudulent intent are sufficient to support Shank's claim for punitive damages.

## III. MOTION TO STAY

Presidio also moves to stay this action pursuant to the primary jurisdiction doctrine in the event any claims survive the motion to dismiss. Presidio moves for a stay pending referral to the FDA for a determination of the proper definition of the terms "natural" and "naturally derived" in the context of cosmetic product labeling, arguing that such a referral would cause only minimal delay while affording the FDA a proper forum in which to clarify its position on the definition of those terms.

"Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in

United States District Court
Northern District of California

the first instance by the agency with regulatory authority over the relevant industry rather than by

the judicial branch.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015)

(quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). "Primary

jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution

of an issue of first impression, or of a particularly complicated issue that Congress has committed

to a regulatory agency." *Brown v. MCI WorldCom Network Servs., Inc.,* 277 F.3d 1166, 1172 (9th

Cir. 2002). "The doctrine does not require that all claims within an agency's purview be decided

by the agency[,] . . . [n]or is it intended to secure expert advice for the courts from regulatory

agencies every time a court is presented with an issue conceivably within the agency's ambit." *Id.*

(quotation omitted). Instead, primary jurisdiction "is a 'doctrine used by the courts to allocate

initial decisionmaking responsibility between agencies and courts where such [jurisdictional]

overlaps and potential for conflicts exist.'" *Syntek Semiconductor Co. v. Microchip Tech. Inc.*,

307 F.3d 775, 780 (9th Cir. 2002) (quoting Richard J. Pierce, Jr., *Administrative Law Treatise* §

14.1, p. 917 (4th ed. 2002)).

"In evaluating primary jurisdiction, [courts] consider '(1) the need to resolve an issue that

(2) has been placed by Congress within the jurisdiction of an administrative body having

regulatory authority (3) pursuant to a statute that subjects an industry or activity to a

comprehensive regulatory authority that (4) requires expertise or uniformity in administration.'"

*Astiana*, 783 F.3d at 760 (quoting *Syntek*, 307 F.3d at 781). Additionally, courts must consider

"whether invoking primary jurisdiction would needlessly delay the resolution of claims." *Id.*

Under Ninth Circuit precedent, "'efficiency' is the 'deciding factor' in whether to invoke primary

jurisdiction." *Id.* (quoting *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)).

The court concludes that a stay is not appropriate in this case. Shank's claims involve the

definition of the words "naturally-derived" and "natural" as used in cosmetic labeling. The Ninth

Circuit has instructed that "[c]ommon sense tells us that even when agency expertise would be

helpful, a court should not invoke primary jurisdiction when the agency is aware of but has

expressed no interest in the subject matter of the litigation." *Astiana*, 783 F.3d at 761. In *Astiana*,

the Ninth Circuit reversed a district court's decision to dismiss, rather than stay, a case challenging

cosmetic labeling on primary jurisdiction grounds. *Id*. at 762. On remand, the district court discussed a March 2013 letter from the FDA to the plaintiff's counsel. *Astiana v. Hain Celestial Grp., Inc.*, No. 11-CV-6342-PJH, 2015 WL 13333579, at *1 (N.D. Cal. Oct. 9, 2015) ("*Astiana II*"). The district court described the letter as follows:

> The FDA letter . . . explains that its resources are fully occupied with health and safety matters, so proceedings to define "natural" "do not fit within our current health and safety priorities." The letter concludes by stating that "we respectfully decline to make a determination regarding the term 'natural' in cosmetic labeling at this time."

*Id*. The court denied the motion to stay on primary jurisdiction grounds, finding that the FDA's letter "shows that the 'agency is aware of but has expressed no interest in the subject matter of the litigation,'" and concluding that a formal referral "would be futile." *Id*. at *2. At the hearing, Presidio was unable to cite any recent developments that would contradict this conclusion. Although it cites the FDA's November 12, 2015 Request for Comments regarding the term "natural," that development concerns "the use of the term 'natural' in the labeling of human food products," and makes no reference to cosmetics. [Docket No. 37 (Diesch Decl., Sept. 28, 2017) Ex. 7.] Moreover, it is far from clear that the FDA will issue guidance on the use of the term natural with respect to food any time soon. At this stage in the proceeding, the court declines to exercise its discretion to stay this action under the primary jurisdiction doctrine.

## IV. CONCLUSION

For the foregoing reasons, Presidio's motion to dismiss is granted in part and denied in part. Presidio's motion to stay is denied. Shank shall file a second amended complaint within 14 days of the date of this order. The court will conduct a case management conference on March 21, 2018 at 1:30 p.m. A joint case management statement is due by March 14, 2018.

**IT IS SO ORDERED.**

Dated: January 23, 2018



Donna M. Ryu
United States Magistrate Judge