UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARRET SHANK,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PRESIDIO BRANDS, INC.,<br><br>　　　　Defendant. | Case No. 17-cv-00232-DMR<br><br>**ORDER ON MOTION TO DISMISS CLAIM FOR INJUNCTIVE RELIEF**<br><br>Re: Dkt. No. 64 |

In this putative class action, Plaintiff Garret Shank alleges that Defendant Presidio Brands, Inc. ("Presidio") engages in false, misleading, and deceptive marketing practices with respect to Presidio's "Every Man Jack" line of men's personal hygiene products. Presidio now moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Shank's claim for injunctive relief. [Docket No. 64.] This matter is appropriate for determination without oral argument. Civ. L.R. 7-1(b). For the following reasons, Presidio's motion to dismiss is denied.

## I.　BACKGROUND

Shank filed this putative class action to challenge the labeling and advertising of Presidio's Every Man Jack products. According to Shank, Presidio's "advertising and labeling strategy focuses on claims that its Every Man Jack products are all-natural, naturally-derived, non-toxic, using only naturally-derived ingredients, and exceptionally safe for consumers." [Docket No. 61 (Second Amended Complaint, "SAC") ¶ 2.] Presidio cultivates the products' image "as a natural, plant-based, non-synthetic, healthy and eco-friendly brand through its wood-grain packaging, plant imagery . . . , and simplistic labeling," as well as through its use of the statements "naturally," "natural," "naturally-derived," and "only naturally derived" on its product labels, on its website, and in magazine advertisements and articles. *Id*. at ¶ 25. However, Shank alleges, the representation that the Every Man Jack products contain "'only naturally-derived' ingredients is

false, misleading, and deceptive," because they actually contain "numerous ingredients that are artificially-engineered through multiple synthetic processes rendering the resulting ingredients and its components unnatural and not naturally-derived." *Id*. at ¶ 26.

Shank asserts that Presidio's conduct violates three California consumer protection statutes: 1) the Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1750 et seq.; 2) the False Advertising Law ("FAL"), California Business & Professions Code section 17500 et seq.; and 3) the Unfair Competition Law ("UCL"), California Business & Professions Code section 17200 et seq. Shank seeks to represent a nationwide class of similarly situated persons who purchased any Every Man Jack product "containing artificially-processed and synthetic ingredients and labeled or marketed as containing 'only naturally derived ingredients.'" SAC ¶ 40.

Presidio previously moved to dismiss Shank's first amended complaint. After the briefing was completed, the Ninth Circuit issued *Davidson v. Kimberly-Clark Corp*., 873 F.3d 1103, 1113 (9th Cir. 2017), which resolves a district court split regarding consumers' standing to pursue injunctive relief in false advertising cases. On January 23, 2018, the court granted in part and denied in part Presidio's motion to dismiss the first amended complaint. *Shank v. Presidio Brands, Inc.*, No. 17-cv-00232-DMR, 2018 WL 510169 (Jan. 23, 2018). In relevant part, the court dismissed the claim for injunctive relief with leave to amend, noting that Shank had conceded that the amended complaint did not contain sufficient factual allegations to establish standing to pursue injunctive relief under *Davidson*. *Id*. at *5-6. Shank timely filed his second amended complaint, and Presidio now moves to dismiss the claim for injunctive relief.

## II. LEGAL STANDARDS

Presidio moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Shank's claim for injunctive relief on the ground that he lacks Article III standing to seek injunctive relief. Mot. 1. "The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be 'ripe' for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). "Standing addresses whether the plaintiff is the proper party to bring the matter to the

court for adjudication." *Id*. at 1122 (citation omitted). As it pertains to a federal court's subject matter jurisdiction, standing is properly raised in a motion to dismiss pursuant to Rule 12(b)(1), not Rule 12(b)(6). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The party opposing the motion bears the burden of establishing subject matter jurisdiction, *see Chandler*, 598 F.3d at 1122, and when reviewing "a motion to dismiss for lack of standing, a district court must accept as true all material allegations in the complaint, and must construe the complaint in the nonmovant's favor." *Id*. at 1121.

## III. DISCUSSION

Presidio argues that Shank's amended claim for injunctive relief remains deficient. In essence, Presidio contends that Shank cannot plausibly allege a likelihood of future injury because if he wants to purchase a Presidio product with an "all natural" label in the future, Shank need only read the product's ingredients list on the spot to confirm whether or not the label misrepresents the product's contents. Presidio asserts that these facts distinguish the circumstances in this case from those addressed in *Davidson*.

A plaintiff must demonstrate standing "separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000). A plaintiff seeking injunctive relief must demonstrate a "real or immediate threat that they will be wronged again—a likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1982) (quotation omitted). "[T]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id*. at 102 (citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. 488, 495-96 (1974). Further, a named plaintiff must show that he or she is subject to a likelihood of future injury. "Any injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

In *Davidson*, the Ninth Circuit examined a district court split regarding "to what extent a previously deceived consumer who brings a false advertising claim can allege that her inability to

3

rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief." The court resolved the issue "in favor of plaintiffs seeking injunctive relief." 873 F.3d at 1113, 1115. In *Davidson*, the plaintiff brought FAL, CLRA, UCL, and fraud claims against the manufacturer of pre-moistened wipes. The manufacturer labeled and marketed the wipes as "flushable," meaning "suitable for being flushed [down a toilet]," and the plaintiff paid a premium for the flushable wipes, as compared to non-flushable wipes. *Id*. at 1107, 1110. The plaintiff later learned that the products were not truly flushable. *Id*. at 1108. The district court dismissed the injunctive relief claim, finding that the plaintiff lacked standing because she had no intention of purchasing the same product in the future and therefore had no risk of future injury. *Id*. at 1109, 1112.

The Ninth Circuit reversed, finding that the plaintiff had "properly alleged that she faces a threat of imminent or actual harm by not being able to rely on [the defendant's] labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief." *Id*. at 1113. *Davidson* held that plaintiffs in consumer false advertising cases have standing to pursue injunctive relief in at least two circumstances:

> In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* at 1115 (citations omitted). The plaintiff in *Davidson* alleged that she continued to desire to purchase wipes suitable for disposal in a toilet, that she would purchase "truly flushable wipes" manufactured by the defendant if it were possible, and that she was continually presented with the defendant's flushable wipes packaging, but had "no way of determining whether the representation 'flushable' [was] in fact true." *Id*. at 1116. The Ninth Circuit found these allegations sufficient for standing purposes:

> We therefore hold that Davidson's allegation that she has no way of determining whether the representation "flushable" is in fact true when she regularly visits stores . . . where Defendants' "flushable" wipes are sold constitutes a threatened injury [that is] certainly impending, thereby establishing Article III standing to assert a claim for injunctive relief.

4

*Id.* (citation and internal quotation marks omitted).

Here, Shank has added allegations relevant to his claim for injunctive relief. He asserts that he would like to buy Presidio's accused products in the future if they were reformulated to contain all-natural ingredients, but he would be "hesitant to rely" on Presidio's labeling due to the misrepresentations that Shank is challenging in this case:

> Plaintiff would like to purchase [Every Man Jack] Products in the future if the products are reformulated so that they no longer contain unnatural, synthetic, or non-naturally derived ingredients, but has no way of knowing whether the reformulation would, in fact, actually contain no unnatural, synthetic, or non-naturally derived ingredients and would be hesitant to rely on the EMJ Products' labels in the future due to the misrepresentations contained herein.

SAC ¶ 15.

Presidio argues that these allegations are insufficient to confer standing to seek injunctive relief because Shank fails to sufficiently allege a likelihood of future injury under *Davidson*. According to Presidio, Shank's allegations are not comparable to those in *Davidson* because Shank does not allege an "inability to determine at the point of purchase whether the Products are not what Plaintiff wants." Mot. 4-5. Presidio contends that the plaintiff in *Davidson* established standing for her injunctive relief claim because if she wanted to buy flushable wipes in the future, she would not have the ready means to verify whether the wipes were actually flushable. By contrast, according to Presidio, Shank "faces no risk of repeated injury from being misled," because he can simply look at the product's ingredients list and "easily determine at the time of purchase if the same allegedly offensive ingredients are still present." *Id*. at 5.

Presidio's position is not persuasive. In *Davidson*, the Ninth Circuit determined that a plaintiff may seek injunctive relief because "she faces a threat of imminent or actual harm by not being able to rely on [a defendant's] labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief." 873 F.3d at 1113. In reaching this decision, the Ninth Circuit rejected the reasoning expressed by a number of courts that a "previously-deceived-but-now-enlightened plaintiff simply does not have standing under Article III to ask a federal court to grant an injunction." *Id.* at 1114 (quoting *Machlan v. Proctor & Gamble Co.*, 77 F. Supp. 3d 954, 960 (N.D. Cal. 2015)). *Davidson* did not address the exact defense argument presented here —

namely, that Shank lacks standing for injunctive relief because if he wants to purchase the product in the future, he will be able to confirm whether Presidio's label is misleading by checking it against the list of ingredients on the product. Nevertheless, *Davidson*'s favorable citation to two decisions suggests that the Ninth Circuit would reject Presidio's reasoning.

First, *Davidson* cites *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JST, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) to illustrate its holding that the threat of future harm may be established if a consumer plausibly alleges that she wants to purchase the product in the future, but will be unable to rely on the product's labeling. *Davidson*, 873 F.3d at 1115. In *Lilly*, the court explained the nature of the consumer injury in such circumstances as follows:

> When a consumer discovers that a representation about a product is false, she doesn't know that another, later representation by the same manufacturer is also false. She just doesn't know whether or not it's true. A material representation injures the consumer not only when it is untrue, but also when it is *unclear* whether or not it is true.

*Lilly*, 2015 WL 1248027, at *3 (emphasis in original).

More importantly, *Davidson* discusses *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 527 (N.D. Cal. 2012). *Davidson*, 873 F.3d at 1114-1115. The circumstances in *Ries* are factually comparable to those raised here. In *Ries*, the plaintiffs alleged that the defendants falsely advertised their "AriZona Iced tea" beverages as "All Natural" and "100% Natural," even though the products contained high fructose corn syrup and citric acid. For example, plaintiff Ries had purchased an accused beverage based on its "all natural" labeling. After taking a sip, she looked at the ingredients and noticed that the product contained high fructose corn syrup. She felt deceived by the "all natural" labeling, and consequently discarded the rest of the drink. 287 F.R.D. at 527. The defendants in *Ries* argued that the plaintiffs lacked standing to pursue injunctive relief because there was no threat of future harm since they were aware of the contents of the beverages and could no longer be deceived. *Id*. at 533. The court rejected this argument, emphasizing that a defendant's false representation about a product can lead to a consumer's reluctance to rely on the defendant's labeling in the future:

> Plaintiffs request to be relieved from false advertising by defendants

6

> in the future, and the fact that they discovered the supposed deception some years ago does not render the advertising any more truthful. Should plaintiffs encounter the denomination "All Natural" on an AriZona beverage at the grocery store today, they could not rely on that representation with any confidence. This is the harm California's consumer protection statutes are designed to redress.

*Id*. In *Ries*, the plaintiff simply could search for the words "high fructose corn syrup" on the bottle's ingredients list during any future contemplated beverage purchase, presenting an even more compelling illustration of the point which Presidio pursues here. *Davidson*'s adoption of the analysis in *Ries* strongly suggests that the Ninth Circuit would reject Presidio's reasoning that a plaintiff cannot establish standing for injunctive relief if she can check whether she is being lied to by examining the fine print on a product label.

*Ries* went on to note that "were the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result." 287 F.R.D. at 533. Likewise, although the *Davidson* court was careful to point out that its conclusion "is not based on this consideration," the Ninth Circuit observed that "[w]ere injunctive relief unavailable to a consumer who learns after purchasing a product that the product's label is false, California's consumer protection laws would be effectively gutted." *Davidson*, 873 F.3d at 1115-1116.

In addition to *Davidson*'s favorable reliance on *Ries* and *Lilly*, the Ninth Circuit provided other important guidance on this issue in an earlier case where it held that "reasonable consumers" should not "be expected to look beyond misleading representations on the front of [packaging] to discover the truth from the ingredient list in small print on the side of the [packaging]." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008). The court went on to state that "[w]e do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception." *Id.*

Shank alleges that he would like to purchase Presidio's products in the future, but that he "would be hesitant to rely on the [Every Man Jack] Products' labels in the future" due to the present alleged misrepresentations on the labels. SAC ¶ 15. These allegations are sufficient as a matter of pleading to confer standing to seek injunctive relief, because Shank alleges that he will

not be able to trust Presidio's claims about Every Man Jack products. *See Davidson*, 873 F.3d at 1115. Shank's ability to read the products' ingredients does not render Presidio's allegedly false advertising that the products contain "only naturally-derived" ingredients "any more truthful." *See Ries*, 287 F.R.D. at 533. The court concludes that Shank has sufficiently alleged standing to seek injunctive relief.

Presidio points to a post-*Davidson* decision to support its position, but it is distinguishable. In *Fernandez v. Atkins Nutritionals, Inc*., No. 3:17-cv-01628-GPC-WVG, 2018 WL 280028, at *1 (S.D. Cal. Jan. 3, 2018), the plaintiff alleged that the defendant "misleadingly label[ed] its snack products with regard to their 'net' carbohydrate content." The defendant's product labels included "net carb" calculations for the snack products, and its website provided the basis for the net carb calculation, which was "the total carbohydrate content of the food minus the fiber content and sugar alcohols." *Id*. The defendant's website provided information about why it did not count the "carbohydrates in fiber, glycerine, and sugar alcohols" in the net carb calculation, and suggested that the calculation was "based on 'science.'" *Id*. The plaintiff alleged that the net carb calculations listed on the products' labels were misleading because the defendant's method of calculating net carbs conflicted with the method that its founder had previously "espoused . . . in his books," whereby "only fiber should be deducted from the calculation of net carbohydrates, not sugar alcohols." *Id*. The plaintiff also alleged that the defendant's method of calculating net carbs conflicted with "authoritative scientific research on sugar alcohols." *Id*.

The court dismissed the plaintiff's claim for injunctive relief where she "[did] not allege that she wishes to purchase [the defendant's] products anymore" and "admit[ted] that she now has knowledge that enables her to make an appropriate choice with respect to [the defendant's] products"—i.e., she "now knows how Atkins goes about calculating its net carb claims." *Id*. at *14-15. Importantly, the *Fernandez* plaintiff did not state that she maintains a desire to purchase the accused products in the future. This alone is fatal to an injunctive relief claim under *Davidson. See Davidson*, 873 F.3d at 1115. By contrast, Shank alleges that he would like to purchase Every Man Jack products but "has no way of knowing whether [a] reformulation would . . . actually contain no unnatural, synthetic, or non-naturally derived ingredients" and that he "would be

8

hesitant to rely on the [Every Man Jack] Products' labels in the future." SAC ¶ 15. To the extent that *Fernandez* can be read to support the proposition that a consumer cannot be deceived by future mislabeling if the consumer has ready access to information to test the veracity of the representation, this court respectfully disagrees with that reasoning.

## IV. CONCLUSION

For the foregoing reasons, Presidio's motion to dismiss Shank's claim for injunctive relief is denied.

**IT IS SO ORDERED.**

Dated: April 25, 2018



Judge Donna M. Ryu
United States Magistrate Judge

9